This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

**v.**                                                                              **No. 30,283**

**WENDY HOLLAND,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Albert "Pat" S. Murdoch, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

D. Eric Hannum
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**SUTIN, Judge.**

    Defendant Wendy Holland appeals the district court's denial of her motion to suppress evidence. [DS 4] She contends that it was improper for police officers to

detain her and run a warrants check after their suspicion that she was another person was dispelled. This Court filed a notice of proposed disposition on June 16, 2010, proposing to affirm. Defendant filed a memorandum in opposition to proposed summary affirmance on June 21, 2010, which we have given due consideration. We affirm.

"We review the denial of a motion to suppress as involving a mixed question of law and fact, reviewing the facts under the substantial evidence standard and then conducting a de novo review of the district court's application of law to those facts." *State v. Affsprung*, 2004-NMCA-038, ¶ 6, 135 N.M. 306, 87 P.3d 1088. Under the substantial evidence standard, "[w]e view the evidence in a light most favorable to the district court's determination." *Id.*

We draw our understanding of the factual setting from both Defendant's docketing statement and the State's response to Defendant's motion to suppress physical evidence filed in district court, as the latter provides additional information that we consider relevant. [RP 37-42] Defendant's memorandum in opposition does not dispute any of the facts set forth in our calendar notice. Dicky Dale had left the scene of a minor accident driving a silver Mustang. [DS 2] Investigating officers located Dale at his probation office, where he was held for violating his probation or parole. [DS 2; RP 37] Dale told police officers that his girlfriend, Jo Maxey, was a

probation absconder who might return to the motel where Dale was registered. [DS 2] He said Maxey was blonde and might be driving the Mustang. [Id.] Defendant, who matched that description, arrived at the motel in the Mustang, and officers asked her for identification. [DS 2-3; RP 39] Defendant produced her driver's license indicating she was Wendy Holland. [DS 3] The officers took her to Dale's motel room, where Dale and the probation officers confirmed that she was not Jo Maxey. [Id.] The officers detained Defendant for a further ten or fifteen minutes while they ran a warrants check, which indicated that she had an outstanding misdemeanor warrant. [Id.] In the course of arresting her, officers found a pipe and the methamphetamine on which her conviction was based. [Id.]

Defendant does not challenge the investigatory detention from its origination through the time at which she produced her valid driver's license. [See DS 3] She contends that even if it was reasonable for the officers to take her to Dale's motel room to confirm that she was not Maxey, the further detention to run the warrants check was improper. [DS 4]

"The police may make an investigatory stop in circumstances that do not rise to the level of probable cause for an arrest if they have a reasonable suspicion that the law has been or is being violated." *State v. Morales*, 2005-NMCA-027, ¶ 14, 137 N.M. 73, 107 P.3d 513 (filed 2004). "A reasonable suspicion is a particularized

suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856. "Unsupported intuition and inarticulate hunches are not sufficient." *Id.* (internal quotation marks and citation omitted); *see also State v. Apodaca*, 112 N.M. 302, 304, 814 P.2d 1030, 1032 (Ct. App. 1991) (recognizing that "[a] reasonable suspicion may be a mistaken one"), *abrogation on other grounds recognized by State v. Gomez*, 1997-NMSC-006, 122 N.M. 777, 932 P.2d 1. "An officer may expand the scope of his detention beyond that which is reasonably related to the circumstances which justified his initial stop only where the officer has reasonable and articulable suspicion that other criminal activity has been or may be afoot." *State v. Taylor*, 1999-NMCA-022, ¶ 20, 126 N.M. 569, 973 P.2d 246 (filed 1998).

The initial part of Defendant's detention was based on the officer's suspicion that Defendant was Maxey, the alleged probation absconder. This suspicion was resolved when Defendant produced a valid driver's license confirming that she was not Maxey, which was further established when Dale and the probation officers confirmed Defendant was not Maxey.

If that were the end of our analysis, we would conclude that Defendant's situation resembled that in *Affsprung*, where the defendant was a passenger in a car

4

stopped for having a faulty license plate light. 2004-NMCA-038, ¶ 2. There, the officer asked the defendant for identification, as was his routine. *Id.* Although the officer "had no suspicion that [the d]efendant was then or had been engaged in criminal activity, or that [the d]efendant was armed or dangerous," he ran a warrants check. *Id.* ¶ 4. This Court held that the request for identification and the warrants check was an unlawful detention and reversed the denial of the defendant's motion to suppress the evidence found in the course of the arrest. *Id.* ¶¶ 21-22.

Defendant's production of her driver's license confirming her identity is not the end point for our analysis, however, nor is her identification by Dale and the probation officers in Dale's motel room. As the State pointed out in district court in its response to Defendant's motion to suppress, the hit-and-run accident was also an open investigation. [RP 40-41] The officers had information that Dale was the driver involved in the accident and that Maxey might arrive at the motel in the subject car. [DS 2] When Defendant turned up driving the car instead of Maxey, the officer was in possession of information that a car recently involved in a hit-and-run accident while being driven by Dale, a probation or parole violator, was anticipated to arrive at the motel being driven by a different probation violator, Maxey. Instead, the car arrived with Defendant behind the wheel. In these circumstances it was reasonable for the officer to look into the situation, especially the possibility that Defendant was

involved in the hit-and-run accident. While we have no information as to how long Defendant's entire encounter with the officers took and viewing the evidence in a light most favorable to the district court's determination, we conclude that the asserted ten to fifteen minutes to check for warrants was reasonable. *See id.* ¶ 6.

For the reasons set forth in this opinion, we affirm the district court's denial of Defendant's motion to suppress.

**IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**CELIA FOY CASTILLO, Judge**